FILED

December 26, 2014

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 1:22 PM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: Lawrence Richard Brunner, Jr.**   **DOCKET #: 2014-08-0003**
**STATE FILE #: 64691/2014**

**EMPLOYER: Blue Sky Couriers**   **DATE OF INJURY: July 24, 2014**

**CARRIER:  Travelers Property Casualty Company of America**

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Lawrence Richard Brunner, Jr. (Mr. Brunner).

On October 6, 2014, a Request for Expedited Hearing was filed with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, on behalf of Mr. Brunner pursuant to Tennessee Code Annotated section 50-6-239 to determine if the provision of medical benefits and/or temporary disability benefits is appropriate. Mr. Brunner requested an evidentiary hearing. Prior to the Expedited Hearing, the parties advised that the only issue to be determined at this hearing was whether Mr. Brunner was an independent contractor or an employee for workers' compensation purposes.

The Court conducted a telephonic hearing on December 4, 2014. Mr. Brunner was represented by attorney David Gordon. Blue Sky Couriers (Blue Sky) and Travelers Property Casualty Company of America (Travelers) were represented by attorney Paul Nicks. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court hereby finds that Mr. Brunner is an independent contractor and not an employee.

### ANALYSIS

#### Issues

*By agreement of the parties, the only issue before the Court for this Expedited Hearing is whether Mr. Brunner was an independent contractor or employee for workers' compensation purposes at the time of the accident. All remaining issues will be determined at a later time, if necessary.*

1

**Evidence Submitted**

The Court received and considered the following documentation and information submitted by the parties:

Exhibits 1-3 were marked for identification only and were not admitted into evidence. Attorney for Blue Sky objected to Exhibits 5 and 6 being introduced into evidence, subject to being authenticated by Mr. Brunner in his testimony. During the testimony of Mr. Brunner, Exhibits 5 and 6 were introduced into evidence without objection. All other Exhibits were admitted into evidence by agreement and without objection.

<u>Exhibit Number:</u>

1. Request for Expedited Hearing, filed October 6, 2014
2. Dispute Certification Notice
3. Petition for Benefit Determination, filed August 20, 2014

4. Notice of Denial (Form C-23)
5. Letter from Mr. Brunner to Blue Sky dated August 14, 2014
6. Affidavit of Mr. Brunner dated August 8, 2014
7. Wage Statement
8. Form I-18, Election of Non-Coverage By Subcontractor
9. Independent Contractor Agreement For Transportation Services ("Agreement")
10. Affidavit of Rick Kernan, dated September 17, 2014
11. Medical records, Dr. Claiborne Christian, dated August 12, 2014
12. Medical records, Dr. Claiborne Christian, dated July 31, 2014
13. Medical records, Dr. Claiborne Christian, dated July 24, 2014
14. Medical records, Dr. Claiborne Christian, dated August 12, 2014
15. Medical records, Baptist Hospital-Desoto, dated August 8, 2014
16. Medical records, Dr. Claiborne Christian, dated July 21, 2014
17. Medical records, Dr. Claiborne Christian, dated July 24, 2014
18. Itemized Bill, Dr. Claiborne Christian
19. Contractor Settlements form
20. Log-In Sheets
21. Dispatch Sheets
22. Copy of Application of Mr. Brunner with Blue Sky
23. Deposition of Mr. Brunner

**Stipulations of the Parties**

Prior to this Expedited Hearing, the parties stipulated, as follows:

1. That Lawrence Brunner injured himself while making a delivery for Blue Sky Couriers on July 24, 2014, when he fell from the back of his truck while working on a load.

2. Mr. Brunner suffered what has been diagnosed as a tibial plateau fracture to his right leg.

3. That Mr. Brunner's weekly compensation rate would be $597.55.

4. That as a result of Mr. Brunner's injury, he has not been able to return to work at this time.

5. That Mr. Brunner has incurred medical expenses to date from Claiborne Christian, M.D., in the amount of $1,533.90, and from Baptist Memorial Hospital in the amount of $2,073.00; but the parties agree that only health insurance reimbursement plus Mr. Brunner's liability portion must be paid by Blue Sky Couriers in the event the Court finds in favor of Mr. Brunner.

6. That in the event the Court finds in favor of Mr. Brunner, Blue Sky Couriers will be responsible for the full range of workers' compensation benefits under Tennessee law.

7. That the only issue currently before the Court is whether Mr. Brunner was an independent contractor or employee for workers' compensation purposes at the time of the accident.

### History of Claim

Mr. Brunner is a 48 year old delivery driver ("Courier"). His relationship with Blue Sky began on June 29, 2012, when the parties entered into an agreement entitled "Independent Contractor Agreement for Transportation Services" ("Agreement") (Exhibit 9). Mr. Brunner also filled out and signed the Tennessee Department of Labor "Election of Non-Coverage by Subcontractor" (Exhibit 8) for Blue Sky before he started making deliveries. On July 24, 2014, Mr. Brunner fell and injured his right leg while making a delivery. The claim was formally denied (Exhibit 4) on the basis that Mr. Brunner was an independent contractor and not an employee of Blue Sky.

In order to work for Blue Sky, Mr. Brunner was required to sign the independent contractor "Agreement". Therein, Blue Sky is identified as the "Company" and Mr. Brunner is identified as the "Contractor." The "Agreement" provides in pertinent part:

1. The Company is engaged in the business of providing delivery services.
2. The Company has a need for the services of independent Contractors to pick up, transport and deliver items for the customers of the Company.
3. The Contractor is willing to be available from time to time to perform delivery services for the customers of the Company as an independent contractor when the Contractor shall choose to do so.
4. The parties agree that the relationship of the Contractor with the Company is that of an independent contractor.
5. The Contractor is not an employee of the Company, there is no workers' compensation insurance available, and Contractor waives any workers' compensation claims against Company.
6. The Company has no right to direct or control the details or methods by which the Contractor performs his services and the Company shall be concerned only with the results to be

3

accomplished. The Contractor has the right to decline or accept any request for delivery services. The Contractor controls the route taken for delivery services.

7. The Contractor has the right to decline or accept requests to perform delivery services.
8. The results of the work must conform and meet the general standards and approval of the Company's customers.
9. The Contractor shall provide a motor vehicle to perform delivery services, and the Contractor shall have control of the motor vehicle. The Contractor shall pay all costs and expenses incident to the operation of the vehicle.
10. The Contractor shall furnish at his own cost equipment needed, such as radio equipment, pagers, and material handling equipment. This equipment may be leased from the Company.
11. The Company may terminate the independent contractor "Agreement" for non-compliance with safety regulations, failure to keep insurance on his vehicle or performance that reflects badly on the Company.
12. The Contractor is paid sixty percent of the delivery charge paid by the customer.

Mr. Brunner testified at the Expedited Hearing regarding his relationship with Blue Sky, as follows:

1. He was aware that he read and signed the independent contractor "Agreement" to work as an independent contractor prior to beginning work with Blue Sky.
2. He provided his own truck, including gas, maintenance and insurance for the vehicle. He also furnished a two-wheeler and tie-down straps. If he received a traffic ticket, he had to pay it.
3. He had to purchase from Blue Sky a radio and Verizon cell phone equipped with a particular application enabling him to communicate with the Blue Sky dispatcher.
4. He had to purchase a uniform from Blue Sky that he was required to wear.
5. Blue Sky gave him magnetic identification stickers that he could place on his vehicle.
6. He was required to check in every morning and did so at 8:00 a.m. Usually after checking in, he would receive a notification on his cell phone application that he had one or more deliveries available. He would be advised of the pick-up and delivery locations, as well as the time allowed for making the delivery. The time allowed for delivery would be set by the customer, not Blue Sky.
7. If he was going to be late, thus delaying his availability for work, he would call to advise the dispatcher. However, if he was late calling in, the dispatcher would call him to see if he was going to be able to work on that day.
8. He was not permitted to check out early, and he had to remain available to 4:30 or 5:00 p.m. for deliveries. If a "Courier" wanted to take off, he had to get permission from Blue Sky two or three weeks in advance.
9. Blue Sky could terminate his "employment" if it so desired.
10. He was paid sixty percent of each delivery, and that was not negotiable with Blue Sky. No taxes were withheld from that amount.
11. He did not know whether he was free to hire his own helpers.
12. Though he was not prohibited from working for other companies, he does not do so. However, he would not have time to offer his delivery services to another company because of the number of hours he worked each day with Blue Sky.

13. He was trained in Blue Sky procedures by riding with another "Courier" for a day.
14. He had the freedom to select the route he would take for deliveries.

Mr. James Mize, a former Blue Sky driver, testified as a rebuttal witness on behalf of Mr. Brunner at the Expedited Hearing, as follows:

1. He started working as a driver/Courier for Blue Sky in 1998 and worked there until 2010.
2. He was required to check in at 8:00 a.m. and to work until 5:00 or 5:30 p.m.
3. "Couriers" were required to get permission from Blue Sky to take time off, however, he never called in to request time off.
4. He was terminated by Blue Sky under the following circumstances. On a date in 2010, at approximately 5:00 p.m., he was requested to deliver a heavy load weighing about 700-800 pounds to Olive Branch, MS. Using his cell phone application, he could either accept the assignment or reject the assignment. He rejected the assignment. The dispatcher sent the request again, and again he rejected it. Then the dispatcher called him on the radio and asked why he turned down the load. He told the dispatcher he did not feel well, was tired and could not handle the load. Subsequently, Mr. Hechinger, President of Blue Sky called him to inquire as to the problem with accepting the assignment. Mr. Mize advised Mr. Hechinger of the information he told the dispatcher. Mr. Hechinger told Mr. Mize to either perform the assignment or turn his equipment in, meaning he was fired. He did not perform the run and he turned in his equipment the next morning. He also got another job the next day.
5. He had no problem with punctuality while working for Blue Sky, never checking in more than five (5) minutes late. He does not know if anyone was ever fired for checking in late. He was never denied a request to take time off.

Mr. Richard Hechinger, President of Blue Sky, testified, as follows:

1. Blue Sky is a local, on demand, pick-up and delivery company, doing mostly business to business deliveries. All drivers/Couriers are hired as independent contractors. At the present time Blue Sky has seventy-three (73) "Couriers".
2. He personally was involved in signing Mr. Brunner as an independent contractor. He and Mr. Brunner both signed the independent contractor "Agreement". He personally discussed with Mr. Brunner that Brunner would be an independent contractor, which required him to provide his own vehicle, his own tools and that he would receive a percentage of the delivery fee. Mr. Brunner was told that the more he delivered, the more he would get paid.
3. "Couriers" are required to wear a Blue Sky uniform because it makes them more recognizable to the customers and, thusly, makes the job easier.
4. "Couriers" use the designated Verizon telephone and application so as to have a common communication platform for the dispatcher to communicate with the "Courier".
5. "Courier" are free to hire and pay their own helpers, and some currently do so.
6. "Couriers", depending on their availability, are not required to check in and out at any particular time, and some are currently doing so.
7. If a "Courier" is not going to be available to work on any particular day, he notifies the dispatcher who will list him as not available on that day.
8. A "Courier" is free to refuse a delivery if so desired, and there would be no repercussions.

9. Mr. Hechinger addressed the rebuttal testimony of Mr. Mize, as follows:
   a. By 2010, the market for Blue Sky's deliveries had changed from smaller packages to larger and more complicated packages. Initially many customers wanted envelope delivery, but, due to technology, that market had disappeared. Mr. Mize preferred to deliver envelope packages and his attitude towards the work was diminishing. Mr. Hechinger discussed this with Mr. Mize and got him another job with Tag Trucks that was less stressful. For a period of time, the new job with Tag Trucks worked well, but, Mr. Mize subsequently advised he had quit and wanted to come back to Blue Sky. Mr. Hechinger advised he no longer had a position for him. Mr. Mize returned to Tag Trucks, obtained his former job and stayed a few more months. Eventually Mr. Mize did come back to Blue Sky as a "Courier", but his attitude did not improve.
   b. Mr. Hechinger remembers the circumstances of Mr. Mize's termination in 2010. He got a call from his dispatcher saying Mr. Mize was refusing to take a delivery and the dispatcher did not have anyone else to perform the assignment. He called Mr. Mize and said "maybe you just need to turn your equipment in" and he said "okay." He was not terminated only for refusing that particular load, but such was the last straw. He had been unhappy and causing morale problems for a long time.
   c. Mr. Hechinger denied that Mr. Mize was ever required to check in at 8:00 a.m. or stay until 5:00 p.m.
   d. Mr. Hechinger denied ever firing anyone for simply refusing a load, however he stated in his testimony "I had plenty of opportunity in the past to terminate Jimmy [Mize] for refusing loads, because it was a fairly regular occurrence for him."

Mr. Frederick (Rick) Kernan, Operations Manager of Blue Sky testified, as follows:

1. The majority of customers will request deliveries between 8:00 a.m. and 5:00 p.m.
2. "Couriers" are not required to check in at a particular time, but the first "Courier" that checks in will get the first delivery work. Therefore, the earlier a "Courier" checks in, the better placement he has to get delivery work.
3. He never told Mr. Brunner that he was required to check in at 8:00 a.m. However, if a "Courier" normally checks in at 8:00 a.m., and fails to do so on a particular day, he will call them to determine their status.
4. "Couriers" are free to check out at any time. He told Mr. Brunner he would like him to be available to 4:30 or 5:00 p.m., but that it was his decision whether to do so.
5. "Couriers" are free to take vacations whenever they desire.
6. "Couriers" can offer their services to companies other than Blue Sky.
7. If a "Courier" damages a package, they have to pay for it.
8. A "Courier" does not have to get permission to miss a day, he can just notify Blue Sky that he will not be working on that day.

## Employee's Contentions

Mr. Brunner contends that he was working as an employee, not an independent contractor, at the time of his work injury. He contends that the only thing supporting Blue Sky's position is the

paperwork, such as the independent contractor "Agreement." He contends that paperwork is not important, and it necessary to look at the facts. He contends that "Couriers" work for Blue Sky under a tightly controlled employee situation. Facts allegedly supporting Mr. Brunner's contention are the following:

1. "Couriers" are required to check in to work by a specific time;
2. When assigned a delivery, "Couriers" are given a certain time in which to accomplish the delivery. A "standard" delivery is a two hour delivery. A "rush" delivery is a one hour delivery. A "direct" delivery is an immediate delivery.
3. Regarding tools and equipment, Mr. Brunner had to provide his own truck, insurance on same and his own material handling equipment. Though, Mr. Brunner was required to wear a Blue Sky uniform, it is not significant that he had to pay for it. Also, "Couriers" were given a Blue Sky magnetic door sign and a Blue Sky dash placard to put on their truck. All paperwork was given to "Couriers" by Blue Sky. "Couriers" were required to use a radio and telephone approved by Blue Sky; it is not significant that "Couriers" had to pay for this equipment.
4. Regarding scheduling of hours, "Couriers" were allegedly required to check in by 8:00 a.m. and be available for deliveries until 4:30 or 5:00 p.m. Further, "Couriers" were not allowed to make a few runs in the morning and not work for the rest of the day.

## Employer's Contentions

Blue Sky contends that Mr. Brunner, while working as a "Courier", was an independent contractor, not an employee. Blue Sky contends that the uniform and communication equipment that "Couriers" were required to use were not furnished by Blue Sky, but were purchased or leased by the "Couriers". These items should in no way be considered a method of control, but were items that would assist the "Courier" in communicating with Blue Sky and in being recognized by a customer as a "Courier". The "Courier" furnished his own vehicle, his own two-wheeler, his own tie-downs, and furnished his own vehicle insurance and fuel. Blue Sky did not set Mr. Brunner's schedule; rather, he had the freedom to check in with Blue Sky for deliveries whenever he desired. Blue Sky's regular business hours were from 8:00 a.m. to 5:00 p.m. and "Couriers" can check in at any time. However, the earlier a "Courier" checks in, he is more likely to get a better choice of deliveries and make more money. Likewise, a "Courier" can check out whenever desired, or even refuse deliveries with no repercussions. Furthermore, a "Courier" has the right to work with other delivery services if desired. Regarding payment, "Couriers" receive sixty percent of the delivery fee, with no taxes being withheld.

## Findings of Fact and Conclusions of Law

### Standard Applied

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003).

7

*Factual Findings*

Considering all admissible evidence submitted and stipulations of the parties, the Court finds that Blue Sky considers its drivers to be independent contractors. Blue Sky uses written contracts clearly specifying the terms of its agreement with the "Courier". A "Courier" working for Blue Sky owns the vehicle he uses and is responsible for maintenance, fuel and insurance on the vehicle. Signage on the vehicle (if used at all) is optional with the "Courier" and is magnetic, and, hence, temporary. "Couriers" receive dispatches relaying a particular customer's requirements. Sixty (60%) per cent of the fee received by Blue Sky is paid to the "Courier". Prices for "Courier" deliveries are established by Blue Sky. Blue Sky receives payment from the customer and then pays the "Courier". No taxes are withheld from the "Courier's" portion of the delivery fee and "Couriers" receive an annual Form 1099 showing the fees paid to them. Damage to a package, if caused by the "Courier", is the responsibility of the "Courier". Communication equipment is rented from Blue Sky by the "Courier". A "Courier" is free to accept delivery work from other companies and is free to hire his own helpers. Blue Sky does not specify particular routes that "Couriers" must follow.

Mr. Brunner was injured on July 24, 2014, while making a delivery for Blue Sky. At the time of his injury, Mr. Brunner was working as a "Courier" pursuant to an independent contractor "Agreement" with Blue Sky. Mr. Brunner furnished his own vehicle and equipment, chose whether to accept deliveries given by a Blue Sky dispatcher, was free to hire his own helpers and to accept work from other entities. Mr. Brunner was paid a percentage (60%) of the delivery fee paid by the customer. Blue Sky required that Mr. Brunner wear a hat and shirt identifying him as a "Courier", and required Mr. Brunner to furnish and use specific communication equipment so that he could communicate with a Blue Sky dispatcher. Mr. Brunner was required to purchase or lease the communication equipment and uniform.

*Application of Law to Facts*

*Mr. Brunner was an independent contractor, not an employee.*

The only issue that must be determined is whether Mr. Brunner was an independent contractor or a Blue Sky employee. For the reasons set forth below, the Court finds that this was an independent contractor relationship.

Tennessee Code Annotated section 50-6-102(11)(D)(2014), provides the following concerning the determination of whether an individual is an employee or an independent contractor:

In a work relationship, in order to determine whether an individual is an "employee," or whether an individual is a "subcontractor" or an "independent contractor," the following factors shall be considered:

    (i)     The right to control the conduct of the work;
    (ii)    The right of termination;
    (iii)   The method of payment;

(iv)     The freedom to select and hire helpers;
(v)      The furnishing of tools and equipment;
(vi)     Self-scheduling of working hours; and
(vii)    The freedom to offer services to other entities[.]

With respect to the right to control the conduct of the work, the court finds that that Mr. Brunner had primary control over the work to be performed. He had the right to decline or accept a delivery job that was being offered. Different delivery jobs could have different requirements subject to a customer's wishes. Time constraints on a delivery were established by the customer. If he accepted the job, he made the pickup, he controlled the loading of his truck, he chose the route for the delivery, and he controlled the unloading and delivery of the package. Blue Sky would not direct or control the details or methods by which the Mr. Brunner performed his services, but was concerned primarily with the results to be accomplished.

With respect to the right of termination, Blue Sky could terminate the independent contractor "Agreement" for non-compliance with safety regulations, failure to keep insurance on the vehicle or performance that reflected badly on Blue Sky. On its face, this appears to be a contract that was not terminable at will, but one that was terminable by Blue Sky only for violation of terms of the "Agreement." The testimony of both Mr. Mize, a former driver, and Mr. Hechinger, President of Blue Sky, also shows that while a "Courier" might be able to refuse specific loads without consequences, he may be terminated for regularly refusing loads, especially when no other driver is available. This Court finds that a termination for regularly refusing loads is not inconsistent with a finding that a "Courier" is an independent contractor. It is more indicative that the "Courier" no longer wishes to perform the type of work which Blue Sky has available.

With respect to the method of payment, Mr. Brunner was not paid a specific amount by the hour or by the mile, but was paid a variable amount based percentage of the fee paid by the delivery customer. If he chose to accept more deliveries, he could make more money. With respect to the other statutory factors, Mr. Brunner had the freedom to select and hire helpers, he furnished his own tools and equipment, he could choose whether or not to work on any particular day, and he had the freedom to offer his services to other entities.

The controls that were exercised by Blue Sky included the requirement to wear a shirt and cap with identification as a Blue Sky "Courier" in order to be recognized by customers, the requirement to furnish a radio or pager to communicate with a Blue Sky dispatcher, and the requirement to use a Verizon cell phone with specific functions to check in to be assigned deliveries. These items were paid for by Mr. Brunner and not by Blue Sky. The Court finds that a uniform for identification of the "Courier" and equipment for communication with Blue Sky, were basic necessities which assisted Mr. Brunner in performing his work, but were very minimal exersies of control by Blue Sky.

Tennessee Code Annotated section 50-6-102(11)(D)(2014), provides guidance in determining whether a person is an employee or an independent contractor by listing several factors to be "considered". None of statutory factors are said to be controlling. The Court has taken into consideration all of the above discussed statutory factors, the existence of the independent contractor

9

"Agreement," and the relatively small amount of control exercised by Blue Sky. It is the ruling of the Court that under the *McCall* standards for this interlocutory order, the evidence preponderates in favor of finding that, for workers' compensation purposes, Mr. Brunner is an independent contractor and not an employee.

### IT IS, THEREFORE, ORDERED THAT:

1) Based upon a preponderance of the evidence, Mr. Brunner is found to be an independent contractor and not an employee. This is not a Final Order.

2) This matter is set for an Initial Hearing on February 26, 2015, at 9 a.m.

**ENTERED this the 29th day of December, 2014.**

**Jim Umsted, Judge**
**Court of Workers' Compensation Claims**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Request for Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3)

business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 29th day of December, 2014.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|---------------|------------------|---------|-----------|-----------|---------------|
| David Gordon, Employee's attorney | | | | | x | davidg@davidgordonlaw.com |
| Paul Nicks, Employer's attorney | | | | | x | pnicks@travelers.com |

Jim Umsted, Judge
Court of Workers' Compensation Claims

11